2009 Ark. App. 347

**Julie DAVIS, Appellant,**

**v.**

**Deric SHERIFF, Appellee.**

**No. CA08–247.**

Court of Appeals of Arkansas.

April 29, 2009.

Rehearing Denied June 3, 2009.

Glen Hoggard, North Little Rock, for appellant.

Alexander Law Firm, by Micah Nail Lane, Jacksonville, for appellee.

KAREN R. BAKER, Judge.

Appellant Julie Davis asserts two points of error with the trial court's modification of custody, placing primary physical custody of the parties' two minor children with appellee Deric Sheriff: (1) The trial court erred in finding the existence of a material change of circumstances in that neither the facts nor the law support the finding; and (2) The trial court erred in finding that appellant failed to make appellee aware of his children's educational issues. For the reasons discussed herein, we affirm.

Appellant and appellee were divorced on September 21, 2001, by decree of an Oklahoma District Court. The decree awarded the parties joint custody of their two minor children, C.S. and R.S., with appellant being awarded primary physical custody. On April 28, 2006, appellee filed a motion in Lonoke Circuit Court for change of custody. At the time of the petition, both parties lived in Arkansas.

Appellee's petition listed a number of allegations as changes in material circumstances: (1) continuous problems maintaining telephone contact with the children; (2) being unaware of his children's whereabouts, home address, and school assignment; (3) the alleged third marriage of appellant since her divorce from appellee; (4) the alleged abusiveness and mental instability of appellant's husband—Brian; (5) Brian's no-contest pleas to a charge of second-degree battery concerning his biological son; (6) the alleged marriage of appellant within one month of her divorce from appellee; (7) three residential moves undertaken by appellant without appellee's knowledge; (8) going without contact with his children for two weeks incident to one of the alleged residential moves; (9) withdrawing and enrolling the children in school incident to each of the alleged residential moves; (10) an alleged announcement of an intent to move again to Oklahoma; and (11) certain behaviors by the children during visitation that appellee attributed to remarks and treatment by their stepfather.

A previous order filed on November 25, 2003, in an Oklahoma court, recognized the parties' agreement settling all pending issues on a petition for modification and relocation, modified the visitation schedule, and granted appellant's request for relocation to Arkansas. The trial court in this matter correctly admonished the parties that allegations of events occurring prior to the 2003 Oklahoma order were not considered for purposes of appellee's petition in this case. Allegations of occurrences prior to 2003 included appellee's being unaware of his children's whereabouts, three residential moves, having no contact with the children for two weeks, and the school enrollments. Regarding allegations of problems with maintaining telephone contact with the children, appellee admit-

ted in his testimony that appellant was in compliance with the court's order concerning telephone contact. He also testified that both he and appellant had been married a total of three times and that he had missed only one weekend of scheduled visitation since 2003. Of the allegations pled by appellee, the only remaining issues alleged as a basis for material change of circumstances were the claims concerning the children's stepfather and his no-contest plea. While appellee alleged that the plea was to a charge of second-degree battery, the stepfather testified that the plea was for a Class A misdemeanor of endangering a minor, rather than a felony charge.

The no-contest plea involved the stepfather's biological son from his first marriage. At trial, the stepfather explained the acrimonious nature of the relationship with his first wife and depicted the charges as an extension of that situation. He also testified that he believed his first wife's ill-will toward him, and her desire to have her new husband become the adoptive father, was such a strong motivation for her actions that continuing to fight her threatened his new family. The trial court's ruling made no finding regarding the stepfather's interaction with the parties' children and its order placed no restrictions on appellant regarding the stepfather's contact with the children. In evaluating the stepfather's explanation, the trial court had the advantage of observing the stepfather's first wife who also testified at the hearing.

The trial court found a change of circumstances existed and granted appellee's motion for change of custody and relocation to Texas. While the order itself did not identify the factual basis supporting the change-of-circumstances finding, the trial court discussed its concern about three issues prior to declaring a material change existed: (1) the attendance of R.S. in kindergarten and first grade; (2) R.S.'s grades in first grade; and (3) a failure to make appellee aware of the educational problems his children were experiencing. The trial court also found that appellee was $8322 in arrears in child support, ordered that appellant pay minimum child support as she was unemployed, and ordered that her obligation would be credited against appellee's arrearage.

■ Appellant's argument on appeal focuses on these three observations of the trial court stated from the bench. The written order of the court set forth no specific findings regarding the matter, and the parties did not ask for specific findings from the court. Rule 52(a) of the Arkansas Rules of Civil Procedure affords a litigant a right to *request* specific findings of the trial court. However, failure to make a timely request for separate findings constitutes a waiver of that right. *Legate v. Passmore*, 268 Ark. 1161, 1162, 599 S.W.2d 151, 152 (Ark.App.1980) (holding that parties could not construe trial court's statement to be exclusive of other legal conclusions it might have reached in determining the verdict and judgment). Where no specific findings are made, we may nonetheless conclude under our *de novo* review that there was sufficient evidence from which the trial court could have found a change in circumstances. *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999).

■ A trial court's decision concerning custody is reviewed *de novo*, but its findings will not be reversed unless they are clearly erroneous. *Hollandsworth v. Knyzewski*, 78 Ark.App. 190, 193, 79 S.W.3d 856, 858 (2002). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake was committed. *Id.* Under these facts, we are

not left with such a conviction. Because the question of whether the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Middleton v. Middleton*, 83 Ark.App. 7, 113 S.W.3d 625 (2003).

Custody should not be changed unless conditions have altered since the most recent custody order was rendered, or material facts existed at the time of the last order but which were unknown to the court, and then only for the welfare of the child. *Gerot v. Gerot*, 76 Ark.App. 138, 61 S.W.3d 890 (2001). The court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold is met, the court must then determine who should have custody with the sole consideration being the best interest of the child. *Id.* Our courts require a more rigid standard for custody modification than for initial custody determinations so as to promote stability and continuity for the children and to discourage repeated litigation of the same issues. *Vo v. Vo*, 78 Ark.App. 134, 139, 79 S.W.3d 388, 391 (2002).

Appellant argues that the factors specifically mentioned by the court at the time of its ruling were not legally significant and do not support the finding that there has been a material change of circumstances. However, this court does not examine each finding cited by a trial court in isolation. *See Hollinger v. Hollinger*, 65 Ark.App. 110, 986 S.W.2d 105 (1999). Certain factors, when examined in the aggregate, may support a finding that a change in custody is warranted where each factor, if examined in isolation, would not. *See Hollinger v. Hollinger, supra* (holding that the noncustodial parent's remarriage, the custodial parent's move, or the passage of

time, when examined in the aggregate, supported a change in custody).

In this case, the trial judge remarked from the bench that she was disturbed about R.S.'s "nonattendance at school" and that appellee "wasn't made aware of a lot of the educational problems his children had." Testimony showed that the younger child had significant absences, had been tardy several times and was being retained in first grade. However, the record does not demonstrate that appellant was thwarting the child's school attendance or academic endeavors. To the contrary, testimony of school personnel revealed appellant to be more involved than the majority of first grade parents and to be responsive to the child's needs and school recommendations. The lack of achieving academic milestones was specifically identified by school personnel as being most likely attributable to as yet undiagnosed neurological causes. The school principal testified that if there had been an issue of unexcused absences, her attention would have been required to address the attendance issue and she was unaware of any problems with appellant or her children regarding noncompliance with attendance regulations. Further, the testimony of school personnel showed that appellee was in contact with the school regarding the children's progress, and refuted his suggestion that a no-pickup instruction impeded appellee's access to school personnel or the children's educational records.

Excessive absences, tardiness, and the lack of academic progress are matters that may be weighed by the trial court in determining the best interest of the child. However, given the evidence in this case, we agree with appellant that none of the concerns specifically listed by the trial court in its comments from the bench, either alone or in combination, constituted a material change sufficient to warrant a

modification of custody. Our agreement with appellant on this point, however, does not end our review.

Our review includes the entire record, and we do not reverse a finding of fact by the trial court unless it is clearly erroneous. *Medlin v. Weiss,* 356 Ark. 588, 158 S.W.3d 140 (2004). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* In reviewing the trial court's decision, we defer to that court's superior position for measuring the witnesses' credibility and evaluating what was in the child's best interest. *Brandt v. Willhite,* 98 Ark.App. 350, 255 S.W.3d 491 (2007).

In this case, the stepfather's conviction of child endangerment against his biological son is sufficient to affirm the trial court's finding that a material change of circumstances existed. We recognize that the trial court made no finding in its discussion from the bench that the stepfather was a threat to the children and provided no restrictions in the order regarding the stepfather's contact with the children. Nevertheless, it is undisputed that the stepfather pled no contest to a charge arising from allegations he caused harm to a child.

The fact that the stepfather disputed the factual basis for the charge to which he pleaded no contest, explaining to the trial court that a conviction for the battery would have ended his military career and he believed that he could not disprove the allegations, cannot refute the fact that he has been convicted of a crime involving harm to a minor child. A plea of no contest is treated as a conviction. *Pryor v. State,* 314 Ark. 212, 861 S.W.2d 544 (1993). *See, e.g., Moore v. Arkansas Dep't of Human Servs.,* 69 Ark.App. 1, 9 S.W.3d 531 (2000) (affirming trial court decision based on a finding made in the previous adjudication order that appellant had sexually abused his daughter and from which appellant had not appealed). Furthermore, a court may consider an individual's purposeful injury to a child whose welfare is not before the court in a proceeding when determining the best interests of children before the court. *See Arkansas Dep't of Human Servs. v. McDonald,* 80 Ark.App. 104, 91 S.W.3d 536 (2002) (finding father's children were dependent-neglected, even though father did not cause direct injury to children in question). We hold that a stepparent's conviction of a crime involving the intentional harm of a minor is sufficient to support a trial court's finding that a material change of circumstances has occurred to justify re-evaluating the best interests of a child.

On appeal appellant challenges only the trial court's finding of a material change of circumstance, and does not specifically challenge its ruling that the change in primary physical custody was in the children's best interests. Because our review of the record does not demonstrate that the trial court clearly erred in finding a material change of circumstances, we affirm.

Affirmed.

VAUGHT, C.J., and MARSHALL, J., agree.